UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE APPLICATION : Case No. 3:20mj229 (TOF)
OF THE UNITED STATES OF AMERICA :
FOR A WARRANT AUTHORIZING THE : **Filed Under Seal**
SEARCH OF INFORMATION ASSOCIATED :
WITH ACCOUNT: KFASO@AOL.COM :
WHICH IS STORED AT PREMISES :
CONTROLLED BY MICROSOFT :
CORPORATION :

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryan Mahar, being duly sworn, depose and state as follows:

### BACKGROUND OF AFFIANT

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code ("U.S.C."), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent with Homeland Security Investigations ("HSI"), and I have been employed by HSI as a Special Agent since July 2011. Prior to serving as a Special Agent with HSI, I was employed as a Special Agent with the United States Secret Service ("USSS") for approximately nine years. I am presently assigned to the HSI office in Hartford, Connecticut. I have received extensive training provided by the Federal Law Enforcement Training Center, the USSS, and HSI in the investigation and enforcement of laws of the United States. I have received training in the area of child pornography (as defined in 18 U.S.C. § 2256) and child exploitation, and have, as part of my daily duties as an HSI agent, investigated violations relating to child exploitation and child pornography, including violations pertaining to the possession, distribution, receipt and production of child pornography, the online

1

enticement of minors, and traveling in interstate and foreign commerce to engage in sexual activity with minors, in violation of 18 U.S.C. §§ 2251, 2252, 2252A, 2422, and 2423.  I have participated in the execution of numerous search and arrest warrants involving child exploitation and/or child pornography offenses.  I also serve as a computer forensic examiner with HSI.

2.     I am currently investigating Kyle Fasold ("FASOLD"), an adult male born in 1970, who at the time of the offense conduct under investigation was residing in the area of Plainville, Connecticut, for knowingly producing, advertising, distributing and possessing child pornography and visual depictions of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2251(a) and (e) (Production of Child Pornography; 18 U.S.C. § 2251(d) and (e) (Advertising Child Pornography); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Receipt or Distribution of Child Pornography); and 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography) and which are more specifically described in Attachment B (the "TARGET OFFENSES").

3.     I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Microsoft Corporation to disclose to the Government copies of the information further described in Section I of Attachment B, which is associated with Microsoft OneDrive account kfaso@aol.com (the "TARGET ACCOUNT"), and is further described in Attachment A.  The information sought is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company which is headquartered and accepts service of legal process, at One Microsoft Way, Redmond, Washington  (hereinafter "Microsoft" or "the Provider").  Upon receipt of the information described in Section I of Attachment B, government-authorized personnel will review that information to locate the items described in Section II of Attachment B.  Attachments A and B are incorporated herein by

2

reference.

4.      On March 6, 2020, a preservation request was sent to Microsoft requesting the preservation of the TARGET ACCOUNT.

5.      Based on the information set forth in this affidavit, I believe there is probable cause that the TARGET ACCOUNT contain items that constitute instrumentalities, fruits, and evidence of the TARGET OFFENSES as further specified in Attachment B.

6.      The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement; my own investigation to include personal observations, documents and other investigative materials that I have reviewed; and my training and experience as a Special Agent with HSI.   Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the TARGET OFFENSES are located within the TARGET ACCOUNT.

## JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3). *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States (including a magistrate judge of such a court) or any United States court of appeals that -- (i) has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

8.       Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## STATUTORY AUTHORITY

9.     As noted above, this investigation concerns alleged violations of the following:

a.     Title 18 United States Code, Sections 2251(a) and (e) prohibit any person from employing, using, persuading, inducing, enticing, or coercing any minor to engage in, or having a minor assist any other person to engage in, or transporting any minor in or affecting interstate or foreign commerce with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed; or attempting or conspiring to do so.

b.     Title 18, United States Code, Sections 2251(d) and (e) prohibit any person from knowingly making, printing, or publishing, or causing to be made, printed, or published, or attempting or conspiring to make, print, or publish, or attempting or conspiring to cause to be made, printed, or published, any notice or advertisement seeking or offering to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct; or participating in any act of sexually explicit conduct by or with any minor for the purpose of producing a visual depiction of such conduct; if such person knows or has reason to know that such notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed; or if such notice or advertisement is transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means including by computer or mailed.

c.     Title 18, United States Code, Sections 2252A(a)(2)(A) and (b)(1) prohibit a person from knowingly receiving or distributing, or attempting or conspiring to receive or distribute, any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

d.     Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2) prohibit a person from knowingly possessing or knowingly accessing with intent to view, or attempting or conspiring to do so, any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means,

including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## DEFINITIONS

10.     The following definitions apply to this Affidavit and Attachment B:

a.      "Bulletin Board" means an Internet-based website that is either secured (accessible with a password) or unsecured, and provides members with the ability to view postings by other members and make postings themselves.  Postings can contain text messages, still images, video images, or web addresses that direct other members to specific content the poster wishes.  Bulletin boards are also referred to as "internet forums" or "message boards."  A "post" or "posting" is a single message posted by a user.  Users of a bulletin board may post messages in reply to a post.  A message "thread," often labeled a "topic," refers to a linked series of posts and reply messages.  Message threads or topics often contain a title, which is generally selected by the user who posted the first message of the thread.  Bulletin boards often also provide the ability for members to communicate on a one-to-one basis through "private messages."  Private messages are similar to e-mail messages that are sent between two members of a bulletin board.  They are accessible only by the users who sent/received such a message, or by the bulletin board administrator.

b.      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver.  Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation.  This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

c.      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors, but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

d.      "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) ("any visual depiction including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct, where (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct."), and also includes any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. 18 U.S.C. §§ 2252 and 2256(2).

e.      "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on

a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

       f.     The "Domain Name System" or "DNS" is system that translates readable Internet domain names such as www.justice.gov into the numerical IP addresses of the computer server that hosts the website.

       g.     "Encryption" is the process of converting data into a code in order to prevent unauthorized access to the data.

       h.     A "hidden service," also known as an "onion service," is website or other web service that is accessible only to users operating within the Tor anonymity network.

       i.     The "Internet" is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

       j.     "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

       k.     "Internet Protocol address" or "IP address" refers to a unique number used by a computer to access the Internet.  Traditionally, IP addresses were either dynamic, meaning an Internet service provider (ISP) assigns a different unique number to a computer every time it accesses the Internet, or static, meaning an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.  Generally, the static IP addresses were assigned by those companies who offered "broadband" Internet service, such as through cable or digital subscriber line (DSL), whereas "dial-up" companies would assign their users dynamic addresses.  Now, however, as a greater number of American Internet users choose broadband Internet service, many of these users are being assigned what may be colloquially referred to as a "sticky dynamic IP address" or a "sticky IP."   A sticky IP is a dynamically assigned IP address that does not change often.  The address leases are usually set to long periods and simply renewed upon expiration.  The practical effect is that one may observe a user being assigned the same IP address for weeks or months and then assigned another IP address for a similar stretch of time.

       l.     "Metadata" or "Exchangeable Image File Format" ("EXIF"), as used herein, is the information about an image or video file including the model of the camera used to capture the photograph, the date and time the photograph was taken and the GPS coordinates where the photograph was captured.

       m.     "Minor" means any person under the age of 18 years.  18 U.S.C. § 2256(1).

       n.     "Mobile applications," as used herein, are small, specialized programs

downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

        o.     "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

        p.     "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

        q.     "Sexually explicit conduct" means actual or simulated (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256(2)(A).

        r.     The "Tor network" is a computer network available to Internet users that is designed specifically to facilitate anonymous communication over the Internet.  The Tor network attempts to do this by routing Tor user communications through a globally distributed network of relay computers, along a randomly assigned path known as a "circuit."

        s.     "Visual depiction" includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.  18 U.S.C. § 2256(5).

## BACKGROUND OF MICROSOFT ONEDRIVE

11.    Microsoft OneDrive is a file hosting service and synchronization service operated by Microsoft as part of its web version of Microsoft Office.  OneDrive allows users to store files, including images and video files online on Microsoft servers and allows users to access their files from any computer or mobile device with an Internet connection.  OneDrive also allows users to share files to other accounts or to the public.  OneDrive also allows the user to sync files across their mobile devices and computers.

12.    Microsoft OneDrive offers 5 gigabytes ("GB") of storage space free of charge, with 100 GB, 1 terabyte ("TB"), and 6 TB storage options available for a fee or included with other

Microsoft subscriptions.

## BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE

13.     This investigation began after images, including images that depicted child pornography, were posted to an online community of individuals who regularly send and receive child pornography via a hidden service website that operated on the Tor anonymity network.  The website is described below and referred to herein as the "TARGET WEBSITE."[1]  As discussed below, some of the images included EXIF data indicating that they were taken at FASOLD's residence and other images were created at a local high school which is connected to FASOLD. On March 6, 2020, investigators executed a search warrant authorized by United States Magistrate Judge Thomas O. Farrish at FASOLD's residence and seized a number of electronic devices.  I have examined many of the electronic devices.  On an Apple iPhone X, an Apple iPad Air 2 and a Microsoft Surface Tablet, I discovered evidence that FASOLD had been saving the images, many of which consist of child pornography, to the TARGET ACCOUNT.  There is probable cause to believe that TARGET ACCOUNT will contain evidence of FASOLD's production, receipt, advertising, and possession of child pornography, as further described herein.

### The Tor Network

14.     The Internet is a global network of computers and other devices.  Devices directly connected to the Internet are uniquely identified by IP addresses, which are used to route information between Internet-connected devices.   Generally, when one device requests

---

1       The name of the TARGET WEBSITE is known to law enforcement.  Investigation into the users of the website remains ongoing and disclosure of the name of the website would potentially alert active website users to the investigation, potentially provoking users to notify other users of law enforcement action, flee, and/or destroy evidence.

information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response.

15.     The website further described below operated on the Tor network, which is a computer network available to Internet users that is designed specifically to facilitate anonymous communication over the Internet.   The Tor network attempts to do this by routing Tor user communications through a globally distributed network of relay computers, along a randomly assigned path known as a "circuit."  Because of the way the Tor network routes communications through the relay computers, traditional IP address-based identification techniques are not effective.

16.     To access the Tor network, a user must install Tor software.  That is most easily done by downloading the free "Tor browser" from the Tor Project, the private entity that maintains the Tor network, via their website at www.torproject.org.[2]  The Tor browser is a web browser that is configured to route a user's Internet traffic through the Tor network.

17.     As data travels through the Tor network, it passes through "nodes," or relay computers.   Each node is able to see the address information of the previous node the communication came from and the next node to which the information should be sent, but not the addresses of other nodes in the relay.  Those Tor nodes are operated by volunteers – individuals or entities who have donated computers or computing power to the Tor network in order for it to operate.  Because a Tor user's communications are routed through multiple nodes before reaching their destination, when a Tor user accesses such an Internet website, only the IP address of the last

---

2       Tor users may also choose to manually configure a web browser or other application to route communications through the Tor network.

relay computer (the "exit node"), as opposed to the Tor user's actual IP address, appears on that website's IP address log.  In addition, the content of a Tor user's communications are encrypted while the communication passes through the Tor network.  That can prevent the operator of a Tor node from observing the content (but not the routing information) of other Tor users' communications.

18.     The Tor Network also makes it possible for users to operate or access websites that are accessible only to users operating within the Tor network.  Such websites are called "hidden services" or "onion services."  They operate in a manner that attempts to conceal the true IP address of the computer hosting the website.  Like other websites, hidden services are hosted on computer servers that communicate through IP addresses.  However, hidden services have unique technical features that attempt to conceal the computer server's location.

19.     Unlike standard Internet websites, a Tor-based web address is comprised of a series of either 16 or 56 algorithm-generated characters, for example "asdlk8fs9dflku7f," followed by the suffix ".onion."  Ordinarily, investigators can determine the IP address of the computer server hosting a website (such as www.justice.gov) by simply looking it up on a publicly available Domain Name System ("DNS") listing.  Unlike ordinary Internet websites, however, there is no publicly available DNS listing through which one can query the IP address of a computer server that hosts a Tor hidden service.  So, while law enforcement agents can often view and access hidden services that are facilitating illegal activity, they cannot determine the IP address of a Tor hidden service computer server via public lookups.  Additionally, as with all Tor communications, communications between users' computers and a Tor hidden service webserver are routed through a series of intermediary computers.  Accordingly, neither law enforcement nor hidden-service

users can use public lookups or ordinary investigative means to determine the true IP address – and therefore the location – of a computer server that hosts a hidden service.

### Description of TARGET WEBSITE

20.     The TARGET WEBSITE is an online child-pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children that is located on the dark web with a Tor-based web address known to law enforcement.  The TARGET WEBSITE is used to host and distribute image and video files depicting child pornography and child erotica that may be downloaded by site users.

21.     The homepage for the TARGET WEBSITE describes different areas accessible to the public and members of the TARGET WEBSITE.  The descriptions of these areas clearly indicate they exist only to facilitate the exchange of child pornography files and the discussion of child sexual abuse.  For instance, one of the areas available only to members contains a description that this area should only be used for child pornography images and videos of children younger than six years old.

22.     Any user has the ability to anonymously enter the TARGET WEBSITE or a user can create a free account by providing a username and password.  Chats and posts in the public area are monitored by moderators who have the ability to upgrade a user to membership in one of the private areas.

23.     After entering the TARGET WEBSITE, users see a list of other users currently logged on and a chronological listing of recent posts showing messages and any links posted by users.  Users can also direct comments to other users on the TARGET WEBSITE using the "@"

11

symbol prepended to a username and then typing a message.  Moderators of the TARGET WEBSITE also encourage users to use "tags" with their posts which enables users to more easily locate a particular category of child pornography.

24.     During the course of the investigation, law enforcement agents accessed the TARGET WEBSITE in an undercover capacity and downloaded child pornography images and videos from multiple users.  Your affiant has been advised by other members of law enforcement and also viewed the TARGET WEBSITE to confirm that these images and videos depict minor children engaged in sexual activity or the lewd and lascivious display of a minor child's genitalia.

**Investigation into FASOLD**

25.     Law enforcement observed that TARGET WEBSITE user "okim" posted multiple comments and links to websites which contained images of child pornography.  Some of these child pornography images were discovered to contain metadata indicating the model of the camera used to capture the photographs, the date and time the photographs were taken and the GPS coordinates where the photographs were captured.

26.      On February 13, 2020 at 12:06 AM (UTC), TARGET WEBSITE user "okim" posted[3] a link to a website ending in .onion, indicating that this website also is hosted on the Tor network.  The link posted by user "okim" resolved to a photo sharing website which contains a gallery of five images.  Four of the images show a pubescent nude minor female who, based on my training and experience appeared to be between 12 – 16 years of age, exiting a shower with blue walls and a shower curtain with green, brown and white vertical stripes.  The EXIF data for some of these images indicated that they were created on June 21, 2017.  The fifth image titled

---

3 Throughout this affidavit, your Affiant includes quoted language from posts on the TARGET WEBSITE.  The quotes contain misspellings, acronyms and slang, which are repeated herein without corrections or changes.

"20180723x015110764xiOS.jpg" shows a pubescent minor female, who also appears to be between the ages of 12 – 16 years, wearing a gray shirt and jean shorts or jeans which are down by her knees so her vagina is visible.  The EXIF data for this image indicated that it was captured on July 22, 2018, at GPS coordinates resolving FASOLD's residence in Plainville, Connecticut. The person depicted in these photographs was identified and is a teenage girl.

27.     On February 13, 2020 at 12:42 AM (UTC), TARGET WEBSITE user "okim" posted "\[g-jail bait\] 13yo with body of women. Her pussy tates great." and a link to a website ending in .onion, indicating that this website also was hosted on the Tor network.  The link posted by user "okim" resolved to a photo sharing website which contains a gallery of seven images and the gallery is labeled "13yo."  Six of the seven images appear to have been taken in a bathroom and appear to depict the same teenage female.  In two of those images, the female's vagina is visible.  The EXIF data for these images contained GPS coordinates which resolved to FASOLD's residence and the EXIF data indicated the majority of these images were created on June 22, 2017 and one image was created on July 14, 2018.  The person depicted in these photographs was identified and is a teenage girl.

28.     Also on February 29, 2020, at 11:52 PM (UTC), TARGET WEBSITE user "okim" posted "\[girl\] mentioned i like to spy." and a link to a website ending in .onion, indicating that this website also is hosted on the Tor network.  The link posted by user "okim" resolves to a photo sharing website which contains a gallery of six images and the gallery is labeled "[victim name abbreviation] 11 – 13".  All six of the images show minor females who appear to be between the ages of 10 – 14 years in various stages of undress.  Two of the six images depict the minor female's genitalia, with gray lockers visible in the background.  The EXIF data for some of these images

contained GPS coordinates which resolved to Plainville High School.  The EXIF data indicated the majority of these images were created on January 9, 2018, January 24, 2019, November 25, 2019, and December 14, 2019.  The person depicted in these photographs was identified and is a teenage girl.

29.     In 2018 and 2019, FASOLD was a swim instructor for the Plainville, Connecticut Recreation Department, which conducts instructional sessions at the Plainville, Connecticut High School pool.

30.     Law enforcement officers examined the high school girls' locker room on March 3, 2020, and did not find any hidden cameras or Apple iPhones in the location where the child pornography images were produced.  Law enforcement believes the child pornography images from the female locker room were captured from an adjacent locked storage area that has a door accessing the locker room with an upper glass window covered in paper.  Law enforcement found evidence of a hole in the paper covering the door's glass window, which could allow a view into the female locker room.

31.     On March 5, 2020, United States Magistrate Judge Thomas O. Farrish authorized a search warrant for FASOLD's residence in Plainville, Connecticut.  On March 6, 2020, a search of FASOLD's residence by law enforcement pursuant to the federal search warrant resulted in the discovery and seizure of numerous electronic devices including an Apple iPhone X, an Apple iPad Air 2 and a Microsoft Surface tablet.  A search of these devices revealed that all the devices contained the Microsoft OneDrive application, which was configured to access the TARGET ACCOUNT.  Additionally, there was evidence that the Microsoft Surface tablet had been used to access the TARGET WEBSITE using Tor.

14

32.    Based on my review of the devices, I know that these devices were configured to store and sync photos, videos and other files to the TARGET ACCOUNT.  This would allow any of these seized devices to easily upload, download and view files in the TARGET ACCOUNT. Within the OneDrive application on the electronic devices seized from FASOLD's residence, I was able to see some of the folders, subfolders and images that were saved in the TARGET ACCOUNT and were available for viewing on the seized devices even without an internet connection.  A review of the folders, subfolders and images that were saved in the TARGET ACCOUNT revealed the TARGET ACCOUNT contains child pornography images in a series of folders and subfolders labeled as "Computer Class," "Start up Files," "Pictures."  Under the "Pictures" subfolder, there are 31 subfolders which appear to be labeled with victim initials or nicknames of victims.

33.    One of these subfolders in the TARGET ACCOUNT labeled with initials of an identified minor victim born in 2006 contained multiple images of the minor victim completely nude exiting a shower in the upstairs bathroom in FASOLD's residence.  Some of these images are visually similar to images from the link posted by user "okim" on February 13, 2020.  An additional image in this subfolder shows the same minor victim in the downstairs bathroom in FASOLD's residence wearing a gray shirt and jean shorts or jeans which are down by her knees so her vagina is visible.

34.    An additional subfolder in the TARGET ACCOUNT labeled with initials of an identified minor victim born in 2004 contained multiple images of the minor victim using the downstairs bathroom in FASOLD's residence and some images show the minor victim's vagina. Some of these images are visually similar to images from the link posted by user "okim" on

February 13, 2020, which resolves to a photo sharing website and contains a gallery labeled "13yo."

35.     An additional subfolder in the TARGET ACCOUNT labeled with initials of an identified minor victim born in 2006 contained multiple images of the minor victim in the Plainville High School locker room and some images show the minor victim's genitalia.  Some of these images are visually similar to images from the link posted by user "okim" on February 13, 2020 which resolves to a photo sharing website and contains a gallery labeled "[victim name abbreviation] 11 – 13."

**CHILD PORNOGRAPHY PRODUCER AND COLLECTOR CHARACTERISTICS**

36.     Based upon my training and experience, as well as from information provided to me by other law enforcement personnel involved in the investigation of cases involving the sexual exploitation of children, I believe the following traits and characteristics are generally found to exist and be true in cases involving individuals who produce, distribute, and/or collect child pornography:

a.     The majority of individuals who produce, distribute, and/or collect child pornography produce, distribute, and/or collect sexually explicit materials, which may consist of photographs, magazines, motion pictures, video tapes, books, slides, computer graphics or digital or other images for their own sexual gratification.  The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel their deviant sexual fantasies involving children.

b.     The majority of individuals who produce, distribute, and/or collect child pornography often seek out like minded individuals, either in person or over the Internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  The different Internet based vehicles used by such individuals to communicate with each other include, but are not limited to: mobile applications, peer-to-peer software, e-mail, e-mail groups, bulletin boards, Internet Relay Chat ("IRC"), newsgroups, instant messaging, and other similar vehicles.

c.     The majority of individuals who produce, distribute, and/or collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths

to conceal and protect from discovery, theft, and damage their collections of illicit materials. They often maintain their collections in private and secure locations such as online storage accounts.

      d.     Individuals who produce, distribute, and/or collect child pornography often use online resources to store child pornography, including online storage services offered by Apple, Microsoft, Inc., Yahoo! Inc., and Google, Inc., among others. The online storage services allow a user to set up an account with a remote computing service that provides electronic storage of computer files in a variety of formats. A user can set up an online storage account from any computer or cell phone with access to the Internet.

### CONCLUSION

37.     Based on the aforementioned factual information, I believe there is probable cause to believe, and I do believe, that evidence of the TARGET OFFENSES is located within the TARGET ACCOUNT, as more fully described in Attachment A, which constitutes and contains items that constitute contraband, fruits, instrumentalities and evidence of crime, or material otherwise criminally possessed, or property that is or has been used as the means of committing the TARGET OFFENSES, as described in Attachment B.

38.     In consideration of the foregoing, I respectfully request that this Court issue a warrant authorizing the search of the TARGET ACCOUNT, as more fully described in Attachment A, for the items more specifically identified in Attachment B.

 

                                                    Special Agent Ryan Mahar
                                                    Department of Homeland Security
                                                     Homeland Security Investigations

Subscribed and sworn to before me this 24th day of March, 2020, *via telephone.*

    /s/ Thomas O. Farrish

HON. THOMAS O. FARRISH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Microsoft OneDrive account KFASO@AOL.COM that is stored at premises owned, maintained, controlled, or operated by Microsoft Corporation, a company which is headquartered and which accepts service of legal process at One Microsoft Way, Redmond, WA 98052-6399.

Notwithstanding 18 U.S.C. § 2252/2252A or any similar statute or code, Microsoft shall disclose responsive data by sending it to Special Agent Ryan Mahar, Homeland Security Investigations, 450 Main Street, Room 522, Hartford, CT 06103 or emailed to ryan.mahar@ice.dhs.gov.

## ATTACHMENT B

### Records to be Seized

**I.      Information to be disclosed by the provider listed on the search warrant**

To the extent that the information described in Attachment A is within the possession, custody, or control of Microsoft, Microsoft is required to disclose the following information to the government for the account listed in Attachment A, regardless of whether such information is located within or outside of the United States.  The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

Such information should include the below-described content of the account listed in Attachment A created, modified or accessed from June 1, 2017 until the present:

   a.      The contents of all folders associated with the OneDrive account, including stored or preserved copies of files sent to and from the account, the source and destination addresses associated with file, and the date and time at which each file was sent;

   b.      Any messages, chats, correspondence, and file sharing records of the OneDrive account including search history and queries using search engines including Internet Explorer, Microsoft Edge, and Bing;

   c.      All transactional information of all activity of the OneDrive account described above, including log files, messaging logs, records of session times and durations, dates and times of connecting, and methods of connecting: and emails "invites" sent or received via OneDrive and any contact lists.

   d.      All records or other information regarding the identification of the OneDrive account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

e.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f.     All records pertaining to communications between Microsoft Corporation and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I created, modified or accessed from June 1, 2017 until the present, including correspondence, records, documents, photographs, videos, electronic mail, chat logs, files, and electronic messages that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2251(a) and (e) (Production of Child Pornography; 18 U.S.C. § 2251(d) and (e) (Advertising Child Pornography); 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1) (Receipt or Distribution of Child Pornography); and 2252A(a)(5)(B) and (b)(2) (Possession of Child Pornography) (the "TARGET OFFENSES"), including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     In any format, lewd and lascivious visual depictions of minors or minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

b.     Any and all notes, documents, records, communications, correspondence, and materials, in any format, pertaining to the production, advertisement, receipt, distribution, and possession (and attempted production, advertisement, receipt, distribution, and possession) of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

c.     Any and all names, addresses, contact information or lists of names, addresses or contact information, in any format, of those who may have been contacted for the purpose of distributing child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2);

d.     Any and all notes, documents, records, communications or correspondence, in any format, concerning the Tor network and membership in online groups, clubs, or services that provide or make child pornography accessible to members;

e.      Any and all records, documents, communications, correspondence, invoices and materials, in any format, that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage;

f.      Any and all notes, documents, records, communications, and correspondence, in any format, reflecting personal contact or any other activities with minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2);

g.      Any and all communications to, from, and/or among the account listed on Attachment A that contain discussions of sexual acts of any kind, and/or discussions involving the photographing or video recording of sexually explicit conduct, as defined in 18 U.S.C. § 2256(2);

h.      Any and all videos and photographs, uploaded to the account listed on Attachment A in any way, of naked or semi-naked minors or minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2), and all information regarding how, when, and where such videos and photographs were uploaded including EXIF data such as Camera Make/Model and Geo-Location data;

i.      All evidence of the account listed on Attachment A using that account to seek out, solicit, share, receive, or send, or attempt to do any of the above, videos or photos of naked or semi-naked minors engaged sexually explicit conduct, as defined in 18 U.S.C. § 2256(2);

j.      All location data whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, precision measurement information such as timing advance or per call measurement data, and Wi-Fi location;

k.      All applications downloaded, installed, and/or purchased by the associated account and/or devices from the Microsoft Store;

l.      All search history and queries using search engines including Internet Explorer, Microsoft Edge, and Bing.

m.      The identity of the person(s) who created or used the account listed on Attachment A, including records that help reveal the whereabouts of such person(s);

n.      Device make, model, and International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of all devices used to access the account listed on Attachment A.

o.      All records concerning the purchase or use of Apple iPhone 7 Plus, Apple iPhone X, Apple iPad Air 2 and/or Microsoft Surface Tablet.